UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE RUSSELL an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a municipality; SAN DIEGO POLICE DEPARTMENT OFFICER L. FANLO (BADGE #7841), an individual; DAVID NISLEIT, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 24cv0527-GPC(SBC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[Dkt. No. 2.]** |

Before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedures 12(b)(6). (Dkt. No. 2.) Plaintiff filed an opposition and Defendants replied. (Dkt. Nos. 4, 5.) Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss with leave to amend.

**Background**

On December 21, 2023, Plaintiff Terrance Russell ("Plaintiff") filed a § 1983 civil rights complaint against Defendants City of San Diego, San Diego Police Department Officer L. Fanlo ("Officer Fanlo"), and David Nisleit, Chief of San Diego Police Department ("Chief Nisleit") (collectively "Defendants"). (Dkt. No. 1-2, Compl.)

1

Plaintiff, a disabled Black man, alleges that on August 15, 2022, around 8:22 p.m., he was watching the sunset at Pacific Beach. (*Id.* ¶¶ 9,10.) Plaintiff was behaving lawfully when Officer Fanlo and a Doe Officer ("Defendant Officers") approached Plaintiff. (*Id.* ¶ 11.) One officer asked Plaintiff, "You starting fires around here, Black man?" (*Id.*) Plaintiff told them he was only watching the sunset and began walking away from Defendant Officers. (*Id.* ¶¶ 11, 12.) Defendant Officers then "grabbed" Plaintiff, ignored his demands to "let him go," forced him to the ground while twisting his arm and wrist, and struck him. (*Id.* ¶ 12.) He was detained for "some time." (*Id.*) Eventually, a Doe Sergeant arrived and informed Plaintiff that the situation was a misunderstanding. (*Id.* ¶ 13.) Defendant Officers let Plaintiff go but wrote a ticket for several alleged offenses, including resisting arrest. (*Id.*) In December 2022, Plaintiff discovered no charges were ever filed. (*Id.* ¶ 14.) Plaintiff claims he suffered physical injuries of a broken finger, busted blood vessels, a bruised rib cage, and a torn rotator cuff as well emotional injuries of anxiety, stress, anger, trouble sleeping, mistrust of police, and humiliation as a result of the alleged encounter with Defendant Officers. (*Id.* ¶ 16.)

Plaintiff alleges nine causes of action: (1) false arrest under 42 U.S.C. §1983; (2) excessive force under 42 U.S.C. § 1983; (3) false imprisonment under 42 U.S.C. § 1983; (4) failure to properly screen and hire under 42 U.S.C. § 1983; (5) failure to properly train under 42 U.S.C. § 1983; (6) failure to properly supervise and discipline under 42 U.S.C. § 1983; (7) *Monell*[1] violation under 42 U.S.C. § 1983; (8) intentional infliction of emotional distress; and (9) violation of California Civil Code section 52.1. (Dkt. No. 1-2, Compl. ¶¶ 17-77.) On March 27, 2024, Defendants filed the instant motion to dismiss for failure to state a claim on the fourth through ninth causes of action which is fully briefed. (Dkt. Nos. 2, 4, 5.) In opposition, Plaintiff agreed to dismiss without prejudice Chief

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Nisleit as a named defendant on the fourth through ninth causes of action. (Dkt. No. 4 at 4.[2]) Accordingly, the Court GRANTS Defendants' motion to dismiss the fourth through ninth causes of action without prejudice as it relates to Defendant Nisleit as unopposed.

### Discussion

**A.     Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations but it must provide allegations that raise a right to relief above the

---

[2] Page numbers are based on the CM/ECF pagination.

speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

When dismissal is appropriate, leave to amend should generally be given freely. *Chubb*, 710 F.3d at 956. However, if the plaintiff's proposed amendments would fail to cure the pleading's deficiencies and amendment would be futile, the Court may dismiss without leave. *Id.*

**B.     Fourth to Seventh Causes of Action – *Monell* Claims**

Defendants move to dismiss the *Monell* claims against the City of San Diego. (Dkt. No. 2-1 at 4-9.) Plaintiff responds he has adequately alleged a *Monell* claim at this stage of the proceedings. (Dkt. No. 4 at 5-9.)

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Id.* at 691-93. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

A plaintiff must establish that "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [he or she] suffered." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (citing *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)). To prevail, a plaintiff must allege "(1) [the plaintiff] had a constitutional right of which he was

deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

The complaint alleges *Monell* liability under four theories: (1) failure to properly screen and hire; (2) failure to properly train; (3) failure to properly supervise and discipline; and (4) an unconstitutional policy, custom or practice. (Dkt. No. 1-2, Compl. ¶¶ 40-64.)

### 1. Fourth Cause of Action - Failure to Properly Screen and Hire

Defendants move to dismiss the fourth cause of action because Plaintiff failed to connect any Defendant Officers' background to a constitutional violation. (Dkt. No. 2-1 at 6.) Plaintiff argues that Defendant Officers' incompetence of using force without provocation or probable cause, and the use of racially insensitive language can only be the product of poor screening and hiring practices. (Dkt. No. 4 at 6.) As such, he contends that an inference can be made that the City's negligent hiring and screening practices were the moving force behind the unlawful interaction and detention. (*Id.*)

A municipality can be held liable under § 1983 for a hiring decision where the plaintiff "demonstrate[s] that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997). A decisionmaker, with final authority, who fails to adequately scrutinize an applicant's background acts with deliberate indifference "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[.]" *Id.* "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 410-11. Thus,

"[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410.

As it concerns a single hiring decision, a more rigorous standard of culpability and causation must apply. *Id.* at 405. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." *Id.* at 406-07. A finding of culpability "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412.

In this case, the complaint alleges that the City failed to properly screen and hire Defendant Officers and its failure to properly screen and hire "as a matter of policy, custom, and practice, in the exercise of their functions, was deliberately indifferent" to Plaintiff's constitutional rights and done with conscious disregard for the dangers of harm and injury to him. (Dkt. No. 1-2, Compl. ¶¶ 41, 42.) The lack of adequate screening and hiring "evince deliberate indifference" to Plaintiff's rights. (*Id.* ¶ 44.)

The complaint relies on a single hiring decision and merely provides a "formulaic recitation" of the elements of a cause of action for failure to screen and hire without any supporting facts connecting the background of the Defendant Officers and the specific constitutional violation. Because Plaintiff alleges a single incident of a failure to properly screen and hire, the connection between the Defendant Officers' background and the specific constitutional violation must be strong. *See Brown*, 520 U.S. at 412. Because Plaintiff has failed to provide any facts to support the failure to properly screen and hire, the Court GRANTS Defendants' motion to dismiss. *See Whyte v. City of San Diego*, Case No., 21cv1159-LAB-MDD, 2022 WL 17491178, at *3 (S.D. Cal. Dec. 7, 2022) (dismissing failure to properly screen and hire as conclusory) (citing *Amaral v. City of San Diego*, Case No.: 17-cv-02409-L-JMA, 2018 WL 3308987, at *3 (S.D. Cal. July 5,

2018) (granting motion to dismiss failure to properly screen and hire for failing "to provide any facts about the City's hiring practices or allege any facts about Williams' background to support the allegation that the City was "deliberately indifferent" in its hiring process")); *Holmes v. Cnty. of Orange*, Case No. SACV 16-00867-JLS (JCGx), 2016 WL 11744286, at *4 (C.D. Cal. Dec. 14, 2016) (granting motion to dismiss failure to properly screen and hire for failing to provide any facts by alleging defendant failed to adequately and properly screen and hire their employees).

### 2.     Fifth Cause of Action - Failure to Properly Train

Defendants maintain that the failure to properly train claim should be dismissed because Plaintiff has failed to provide any facts to support it.  (Dkt. No. 2-1 at 6-7.) Plaintiff disagrees arguing he has plead all the necessary elements.  (Dkt. No. 4 at 6-7.)

Failure to train may serve as a basis for § 1983 municipal liability only "where failure to train amounts to deliberate indifference to rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" in order to demonstrate the public entity's notice that a training policy is deficient and the entity's "continued adherence to a policy it knew or should have known has failed to prevent tortious conduct by employees . . . ." *Id.* at 62 (citation omitted). However, "in a narrow range of circumstances," a pattern of similar constitutional violations may not be required to show deliberate indifference where violations of constitutional rights are "patently obvious" or the "highly predictable consequence" of a failure to train. *Id.* at 63 (citations omitted).

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy

7

that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

Here, Plaintiff summarily alleges that the City is liable for the failure "to maintain adequate and proper training for police officers in the department necessary to educate the officers as to the Constitutional rights of arrestees; to prevent the excessive force and extra judicial punishment of potential arrestees by officers." (Dkt. No. 1-2, Compl. ¶ 48.) Further, he claims that the failure to properly train Defendant Officers "as a matter of policy, custom and practice, . . . was (*sic*) deliberately indifferent" to Plaintiff's constitutional rights and done with conscious disregard for the dangers of harm and injury to him. (*Id.* ¶ 49.)

Again, the complaint merely recites the elements to support a failure to train claim without any supporting facts. Thus, the Court GRANTS Defendants' motion to dismiss the *Monell* claim based on the failure to train. *See Olivan v. Cnty. of Orange*, Case No.: 8:22-cv-00008-FWS-KES, 2022 WL 16857021, at *9 (C.D. Cal. Sept. 1, 2022) (granting motion to dismiss for failure to train when force may be used and the use of reasonable force and training their deputies to cover up unlawful conduct by fellow deputies were formulaic of elements of cause of action and noting that the allegations stem from only one incident).

**3.     Sixth Cause of Action - Failure to Properly Supervise and Discipline**

In the motion to dismiss, Defendants presume that Plaintiff is attempting to allege a cause of action for ratification and argue it should be dismissed as a conclusory recitation of the elements of the claim. (Dkt. No. 2-1 at 7.) In response, Plaintiff does not address ratification but instead relies on *City of Canton v. Harris*, 489 U.S. 378 (1989); however, that case addressed a failure to train, not a failure to supervise and discipline.

Because it is not clear what theory of liability Plaintiff seeks to pursue, the Court declines to conduct an analysis on a theory not clearly articulated. Further, the allegations in the sixth cause of action, as with the other *Monell* theories of liability, are merely conclusory. Thus, the Court GRANTS Defendants' motion to dismiss with leave to amend.

### 4. Seventh Cause of Action- Unconstitutional Policy, Custom or Practice

Defendants maintain that the seventh cause of action should be dismissed as conclusory and because Plaintiff does not identify any specific facts of any specific policy or custom. (Dkt. No. 2-1 at 8.) Plaintiff disagrees maintaining that he has alleged that the City has a widespread unspoken policy of violating individuals' constitutional right to be free from unreasonable seizures. (Dkt. No. 4 at 8-9.)

To establish municipal liability under *Monell*, a plaintiff must allege that "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon*, 6 F.4th at 973. Even if there is no formal or written official policy, a public entity may be liable for a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). The custom or practice must "be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.*

Here, the complaint alleges that the City "maintained a custom, policy, or practice within the meaning of *Monell*, of making inappropriate and illegal traffic contacts despite lacking reasonable suspicion or probable cause." (Dkt. No. 1-2, Compl. ¶ 62.) In other words, the custom or practice is "contacting, detaining, searching and arresting citizen based on unlawful racial profiling." (*Id.* ¶ 64.) "These illegal contacts then lead to using

excessive force, falsely arresting, and otherwise burdening citizens whom object to unlawful profiling, harassment, and discriminatory actions by SDPD officers." (*Id.*)

Again, the allegations in the complaint are merely recitals of the elements of a *Monell* claim without any supporting facts. "Courts have repeatedly rejected sweeping allegations of policies and customs in the absence of facts supporting their existence and applicability." *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1168 (C.D. Cal. 2018) (dismissing *Monell* claims where plaintiffs "fail[ed] to allege any facts showing that any of [the] claimed policies or customs actually exist") (citing cases). Accordingly, the Court GRANTS Defendants' motion to dismiss the *Monell* claim based on an unconstitutional practice or custom for failure to state a claim.

C.  **Eighth Cause of Action – Intentional Infliction of Emotional Distress**

Defendants argue that Plaintiff failed to allege Defendant Officers' conduct that caused his emotional distress was intentional. (Dkt. No. 2-1 at 9.) Plaintiff responds he sufficiently plead the Defendant Officers acted with "reckless disregard" when, "for no reason," they grabbed and threw him to the ground and detained him. (Dkt. No. 4 at 10.) In reply, Defendants then assert that alleging "by engaging in the acts alleged here . . .", it is unclear what specific acts caused his emotional distress. (Dkt. No. 5 at 3.)

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal citations and quotation marks omitted). On the first factor, conduct is "outrageous" when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community" and the defendant's conduct must be "intended to inflict injury or engaged in with the realization that injury will result." *Id.* at 1050-51 (internal quotation marks omitted). "At the pleading stage, Plaintiff need only plead sufficient facts to raise an inference of the requisite intent or reckless disregard."

*Valle v. Morgado,* Case No. 21-cv-05636-EMC, 2021 WL 5507180, at *8 (N.D. Cal. Nov. 24, 2021) (citing *Duenez v. City of Manteca*, No. CIV. S-11-1820 LKK, 2012 WL 4359229, at *15 (E.D. Cal. Feb. 23, 2012)).

The IIED cause of action relies on and references the conduct underlying the false arrest, excessive force and false imprisonment claims, (Dkt. No. 1-2, Compl. ¶ 66 ("[b]y engaging in the acts alleged herein")), providing Defendants notice of the conduct underlying the IIED claim. *See Khan v. 7-Eleven, Inc.*, EDCV 14-00522 DMG (PLAx), 2014 WL 12601018, at *5 (C.D. Cal. Nov. 3, 2014) (incorporating by reference prior allegations in the complaint sufficient to allege reckless disregard element of IIED claim). According to Plaintiff, Defendant Officers, for no lawful reason, detained and forced him to the ground, twisted his arm and wrist, struck him, and as a result, suffered physical and emotional injuries. (Dkt. No. 1-2, Compl. ¶¶ 10-14.) Further, Doe SDPD Sergeant, who arrived on the scene, explained that the incident was a misunderstanding and released Plaintiff. (*Id.* ¶ 13.) Finally, even though he received a ticket for several alleged offenses, no charges were ever filed. (*Id.* ¶¶ 13-14.) Taking these allegations as true, Plaintiff has sufficiently provided notice to Defendants and sufficiently plead facts to allege "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *See Hughes*, 46 Cal. 4th at 1050. Thus, the Court DENIES Defendants' motion to dismiss the IIED cause of action.

**D.     Ninth Cause of Action -Tom Bane Civil Rights Act ("Bane Act"), Cal. Civ. Code § 52.1**

Defendants move to dismiss the Bane Act cause of action for failing to allege threats, intimidation or coercion independent of any threats, intimidation or coercion inherent in the underlying constitutional violation. (Dkt. No. 2-1 at 10.) Plaintiff disagrees. (Dkt. No. 4 at 10-11k.)

The ninth cause of action alleges a violation of California's Bane Act for excessive force in violation of the First and Fourteenth, and Fourth and Fourteenth Amendments to

the United States Constitution as well as the "equivalent provisions of the California Constitution." (Dkt. No. 1-2, Compl. ¶¶ 71, 73, 74.)

The Bane Act provides a private cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(b) & (c); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (the Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion.'").

Contrary to Defendants' argument, on an excessive force claim, the Bane Act "does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Reese*, 888 F.3d at 1043. In *Reese*, the Ninth Circuit relied on *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 801 (2017), where the court of appeal clarified the requirement of a Bane Act claim explaining,

> Properly read, the statutory phrase "threat, intimidation or coercion" serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief. We see no reason that, *in addition*, the required "threat, intimidation or coercion," whatever form it may take, must also be transactionally "independent" from a properly pleaded—and proved—unlawful arrest.

*Id.* at 800 (emphasis in original); *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) ("The [California] Court of Appeal explicitly rejected the [*Shoyoye*[3]-based] argument that [defendants] advance here, explaining that the text of the Bane Act does not require that the offending 'threat, intimidation or coercion' be 'independent'

---

[3] *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947 (2012).

from the constitutional violation alleged. . . . [I]n excessive force cases . . . , [the Bane Act] does not require proof of coercion beyond that inherent in the underlying violation."). Allegations of the use of excessive force can satisfy the "threat, intimidation or coercion" element of a Bane Act claim. *Reese*, 888 F.3d at 1043 (citing *Cornell*, 17 Cal. App. 5th at 799).

Here, Plaintiff's Bane Act claim is based on the excessive force allegations where he claims Defendant Officers, for no lawful reason, detained and forced him to the ground, twisted his arm and wrist, and struck him causing him serious injuries. (Dkt. No. 1-2, Compl. ¶¶ 10-14.) To support Defendant Officers' unlawful conduct, Plaintiff also claims when Doe SDPD Sergeant arrived at the scene, he explained there was a misunderstanding and Plaintiff was released; and even though a ticket for several alleged offenses was issued to him, no charges were ever filed. (*Id.* ¶¶ 13-14.)

Because Plaintiff alleges an excessive force claim, he does not need to allege an independent threat, intimidation or coercion separate from the threat, intimidation, or coercion inherent in an excessive force claim. *See Reese*, 888 F.3d at 1043. Plaintiff has sufficiently alleged a Bane Act claim based on the alleged use of excessive force. *See Estate of Nunis by and through Nunis v. City of Chula Vista*, Case No.: 21-cv-01627-AJB-DEB, 2023 WL 6035705, at *3 (S.D. Cal. Feb. 8, 2023) (the plaintiffs pled facts to support an unreasonable seizure, and as such, the use of excessive force is enough to satisfy the threat, intimidation, or coercion element of a Bane Act claim). Accordingly, the Court DENIES Defendants' motion to dismiss the Bane Act claim.

### E.     Leave to Amend

To the extent the Court dismisses any causes of action, Plaintiff seeks leave to amend. (*See* Dkt. No. 4.) Because leave to amend should be freely granted and would not be futile, the Court GRANTS Plaintiff's request for leave to amend. *See Chubb*, 710 F.3d at 956.

### Conclusion

Based on the above, the Court GRANTS in part and DENIES in part Defendants'

1  motion to dismiss the complaint with leave to amend.[4]  Plaintiff shall file an amended
2  complaint within 21 days of the Court's order.  The hearing set on June 21, 2024 shall be
3  **vacated**.
4       IT IS SO ORDERED.
5  Dated:  June 18, 2024

      Hon. Gonzalo P. Curiel
      United States District Judge

---

[4] To the extent that Defendants, in their reply, dispute the allegations in the complaint because the incident was captured on body worn cameras, (Dkt. No. 5 at 1-2), the Court cannot consider any arguments or evidence outside the complaint on a Rule 12(b)(6) motion to dismiss.  *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).