UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE RUSSELL an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a municipality; SAN DIEGO POLICE DEPARTMENT OFFICER L. FANLO (BADGE #7841), an individual; DAVID NISLEIT, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.:  24cv0527-GPC(SBC)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[Dkt. No. 9.]** |

Before the Court is Defendants' motion to dismiss the *Monell*[1] claims in the first amended complaint pursuant to Federal Rule of Civil Procedures 12(b)(6).  (Dkt. No. 9.)  Plaintiff filed an opposition and Defendants replied.  (Dkt. Nos. 13, 15.)  Based on the reasoning below, the Court GRANTS Defendants' motion to dismiss with leave to amend.

/ / /

/ / /

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

1

**Background**

On December 21, 2023, Plaintiff Terrance Russell ("Plaintiff") filed a 42 U.S.C. § 1983 civil rights complaint against Defendants City of San Diego, San Diego Police Department Officer L. Fanlo, and David Nisleit, Chief of San Diego Police Department. (Dkt. No. 1-2, Compl.)  After the Court granted in part and denied in part Defendants' motion to dismiss, Plaintiff filed a first amended complaint ("FAC") on July 8, 2024. (Dkt. No. 8.)  The FAC alleges claims against Defendants City of San Diego ("the City", San Diego Police Department ("SDPD") Officer L. Fanlo ("Officer Fanlo") and Does 1-50 (collectively "Defendants").  (*Id.*)

Plaintiff is a disabled Black man and alleges that on August 15, 2022, around 8:22 p.m., he was watching the sunset at Pacific Beach.  (*Id.* ¶¶ 9,10.)  Plaintiff was behaving lawfully when Officer Fanlo and Doe Officer ("Defendant Officers") approached him and began to question him.  (*Id.* ¶ 11.)  One officer asked Plaintiff, "You starting fires around here, Black man?" (*Id.*)  Plaintiff told them he was trying to enjoy the sunset. (*Id.*)  Plaintiff then attempted to walk away but Defendant Officers grabbed Plaintiff aggressively, ignored his demands to "let him go," forced him to the ground while twisting his arm and wrist, and struck him.  (*Id.* ¶ 12.)  He was detained for "some time" on the ground.  (*Id.*)  Eventually, a Doe San Diego Policy Department ("SDPD") Sergeant arrived and informed Plaintiff that the situation was a misunderstanding.  (*Id.* ¶ 13.)  Defendant Officers let Plaintiff go but wrote a ticket for several alleged offenses, including resisting arrest which he denies.  (*Id.*)  In December 2022, Plaintiff discovered no charges were ever filed.  (*Id.* ¶ 15.)  Plaintiff claims he suffered physical injuries of a broken finger, busted blood vessels, a bruised rib cage, and a torn rotator cuff as well emotional injuries of anxiety, stress, anger, trouble sleeping, mistrust of police, and humiliation as a result of the alleged encounter with Defendant Officers.  (*Id.* ¶ 17.)  On information and belief, neither the Doe SDPD Sergeant or any other supervisory employee of SDPD reported the misconduct by Defendant Officers regarding the treatment of Plaintiff.  (*Id.* ¶ 14.)

Plaintiff alleges nine causes of action: (1) false arrest under 42 U.S.C. §1983 against Officer Fanlo; (2) excessive force under 42 U.S.C. § 1983 against Officer Fanlo; (3) false imprisonment under 42 U.S.C. § 1983 against Officer Fanlo; (4) failure to properly screen and hire under 42 U.S.C. § 1983 against the City of San Diego; (5) failure to properly train under 42 U.S.C. § 1983 against the City of San Diego; (6) failure to properly supervise and discipline under 42 U.S.C. § 1983 against the City of San Diego; (7) *Monell* violation based on an unconstitutional custom, policy or practice under 42 U.S.C. § 1983 against the City of San Diego; (8) intentional infliction of emotional distress against all Defendants; and (9) violation of California Civil Code section 52.1 against all Defendants. (Dkt. No. 8, FAC ¶¶ 28-88.)

On July 22, 2024, Defendants filed the instant motion to dismiss the fourth to seventh causes of action raised under *Monell* for failure to state a claim which is fully briefed. (Dkt. Nos. 9, 13, 15.)

## Discussion

### A. Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations but it must provide allegations that raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted). When dismissal is appropriate, leave to amend should generally be given freely. *Id.* However, if the plaintiff's proposed amendment would fail to cure the pleading's deficiencies and amendment would be futile, the court may dismiss without leave. *Id*.

**B.    *Monell* Claims Against the City of San Diego**

**1.    Seventh Cause of Action –Unconstitutional Policy, Custom or Practice**

Defendants argue that the seventh cause of action should be dismissed because Plaintiff has failed to allege a widespread policy, practice or custom that deprived him of his constitutional rights. (Dkt. No. 9-1 at 11-12.[2]) Plaintiff responds that he has alleged that the City has a widespread practice of deliberately ignoring existing policies or laws and violates the constitutional rights against unlawful seizures and excessive force against Black people. (Dkt. No. 13 at 10.)

---

[2] Page numbers are based on the CM/ECF pagination.

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Id.* at 691-93. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

To prevail, a plaintiff must allege "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). As to a municipality's policy, a "plaintiff must allege either that (1) a particular municipal action itself violates federal law, or directs an employee to do so; or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights." *Hyun Ju Park v. City and Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (internal quotation marks and citations omitted).

In this case, Plaintiff asserts liability based on a failure to act; therefore, he must allege the City acted with deliberate indifference which is "a stringent standard of fault, requiring proof that a [municipality] disregarded a known or obvious consequence of [its] action." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("Claims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof.") (citations omitted); *see also Hyun Ju Park*, 952 F.3d at 1141 ("When, as here, a plaintiff pursues liability based on a failure to act, she must

allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights.") (citing *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1143 (9th Cir. 2012)).

A plaintiff alleging deliberate indifference can survive a Rule 12(b)(6) challenge if he or she alleges the municipality has engaged in a pattern of prior, similar violations of federally protected rights of which it had actual or constructive notice. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ."); *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (reversing dismissal where plaintiff "specifically allege[s] numerous incidents" of prior, similar incidents of excessive force and the defendant was provided notice of all these incidents); *Bagos v. Vallejo*, No. 2:20-cv-00185-KJM-AC, 2020 WL 6043949, at *5-6 (E.D. Cal. Oct. 13, 2020) ("[p]rior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss."); *Villa v. Cnty. of San Diego,* Case No.: 20-CV-537-CAB-NLS, 2020 WL 5535384, at *3-4 (S.D. Cal. Sept. 15, 2020) (denying motion to dismiss *Monell* claim of policy and custom and failure to train claim as the plaintiff referenced federal investigations, citizen complaints and lawsuits against the County that include similar allegations of misconduct).

Here, the FAC alleges that the City violated Plaintiff's right to be free from an unreasonable seizure, excessive force and unlawful racial profiling. (Dkt. No. 8, FAC ¶¶ 30, 32, 37, 38, 73.) Next, it alleges the City had a custom or practice of making unlawful seizures without any reasonable suspicion or probable cause, using excessive force and "contacting, detaining, searching and arresting citizen based on unlawful racial profiling" despite having policies in place on these issues. (*Id.* ¶¶ 73-74.) Finally, Plaintiff alleges that the City's conduct "legally, proximately and foreseeably" caused him to suffer damages. (*Id.* ¶ 75.)

Plaintiff has not plausibly alleged the City was deliberately indifferent to his constitutional rights to be free from an unreasonable seizure, excessive force and racial profiling by alleging prior, similar incidents by SDPD officers.  Plaintiff relies on four studies and reports he claims show that the City condones this "unspoken policy" of discriminatory and unlawful conduct and excessive force against Black people.  (*See* Dkt. No. 8, FAC ¶¶ 18-25.)

First, the FAC references a 2016 study by San Diego State University of SDPD's policies, customs and practices which revealed that Black people are more likely to be searched and questioned in the field after being stopped.  (Dkt. No. 8, FAC ¶¶ 18, 19.) While Plaintiff does not claim he was subjected to an illegal search, he does allege that he was questioned in the field without any reasonable suspicion based on unlawful racial profiling.  (*Id.* ¶¶ 73-74.)  Thus, the 2016 study is similar to the present case only as to the questioning in the field claim.  Second, the FAC cites to a 2019 published story by NBC San Diego that Black people are five times more likely to be prosecuted for minor offenses.  (*Id.* ¶ 20.)  The Court finds that this study is not factually relevant and does not involve prior, similar violations by the City because it does not concern excessive force or an unreasonable seizure; rather, it addresses excessive prosecutions.  *See Piccini v City of San Diego*, Case No.: 21-CV-01343-W-KSC, 2022 WL 2788753, at *4 (S.D. Cal. July 15, 2022) (relying on the same two studies and concluding "[w]hile both studies suggest the SDPD discriminates based on race and color with regard to traffic stops and prosecutions, the studies do not involve the issue of excessive force or insufficient training for Policy 1.04.").

Next, the FAC relies on a third report, the National Justice Database City Report on the SDPD which disclosed that Black citizens made up 14.8% of all people who experienced traffic stops from 2017-2020 and once stopped they were 2.5 times as often as White people to be searched and five times as often as White people, on average, to be subject to force.  (Dkt. No. 8, FAC ¶ 21.)  Finally, a fourth report, Police Scorecard, a nationwide public evaluation of policing in the United States, revealed that the SDPD

engaged in a pattern of discriminatory policing where black people were stopped at a rate more the 2x higher than White people, were more likely to be searched, arrested and subjected to force during a stop, and were subject to more severe forms of force than other groups. (*Id.* ¶¶ 22-24.) Further, the Police Scorecard revealed that Black people were stopped, in traffic and pedestrian stops, at a rate 219% higher than White people, that SDPD made 35,038 stops of Black people during a 12-month period in a city with a total of 88,774 Black residents and fewer than 15% of these stops were initiated from civilian calls for service. (*Id.* ¶ 24.) Lastly, it revealed that the SDPD were 133% more likely to search Black people than White people during a routine traffic stop, but less likely to find contraband suggesting the department over-searches people. (*Id.* ¶ 25.)

The 2016 San Diego State University study addresses the discriminatory questioning of Black people in the field. Meanwhile, the National Justice Database City Report and the Police Scorecard address traffic or pedestrian stops where Black people have been subject to excessive force and unreasonable seizures significantly more than other racial groups. These allegations could support prior, similar instances of similar constitutional violations experienced by Plaintiff. However, the FAC does not allege the relevant years for the Police Scorecard. More importantly, Plaintiff has not alleged the City of San Diego had actual or constructive knowledge of any of these reports. *See Hyun Ju Park*, 952 F.2d at 1142 ("Park has not plausibly alleged that the Chief of Police was aware of prior, similar incidents in which off-duty officers mishandled their firearms while drinking."). While the 2016 study was prepared by a local university, both the National Justice Database Police Report and the Police Scorecard are national reports about policing in different jurisdictions, including San Diego. However, Plaintiff has not alleged whether these reports were distributed to the City, whether the City had participated in these reports or studies, or whether the City had any actual or constructive knowledge about the reports. Therefore, Plaintiff has failed to plausibly allege that the City was deliberately indifferent to violations of his constitutional rights.

Relying on *Connick* and *Hyun Ju Park*, the Court GRANTS Defendants' motion to dismiss the seventh cause of action for a *Monell v*iolation based on an unconstitutional policy, custom or practice.³  *See e.g., McDonald v. Cnty. of Sonoma*, 506 F. Supp. 3d 969, 983, 986 (N.D. Cal. 2020) (denying motion to dismiss *Monell* claims as IOLERO's audits, an audit disputed by the County of Sonoma, the County of Sonoma's human rights report, and citation to specific instances of excessive force, exhibited deliberate indifference by Sonoma County and Town of Windsor of unconstitutional patterns).

### 2. Fourth Cause of Action - Failure to Properly Screen and Hire

Defendants move to dismiss the fourth cause of action because, despite amendment, Plaintiff fails to connect Defendant Officers' background to a constitutional violation. (Dkt. No. 9-1 at 8.) Plaintiff argues that Defendant Officers' incompetence of using force without provocation or probable cause, and the use of racially insensitive language can only be the product of poor screening and hiring practices. (Dkt. No. 4 at 6.) As such, he contends that an inference can be made that the City's negligent hiring and screening practices were the moving force behind the unlawful interaction and detention. (*Id.*)

A municipality can be held liable under § 1983 for a hiring decision where the plaintiff "demonstrate[s] that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411. A decisionmaker, with final authority, who fails to

---

³ The Court recognizes that Plaintiff's counsel has filed § 1983 complaints in this district and also relied on these same four studies/reports with different results. *Compare McKinnie v. City of San Diego*, Case No. 3:24cv827-H(SBC), 2024 WL 4126062, at *4-6 (S.D. Cal. Sept. 9, 2024) (denying motion to dismiss *Monell* claims relying on four studies alleging discriminatory policing by SDPD) *with Whyte v. City of San Diego*, Case No. 21cv1159-LAB-MDD, 2022 WL 17491178, at *4-5 (S.D. Cal. Dec. 7, 2022) (granting motion to dismiss *Monell* claims concluding that citing to four studies, alone, was insufficient to demonstrate "the City's deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact."). Both cases observed a plaintiff "does not need to prove notice at this stage" but reached different conclusions whether the reports adequately provided notice to survive a motion to dismiss.

adequately scrutinize an applicant's background acts with deliberate indifference "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[.]" *Id.* "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation." *Id.* at 410-11. Thus, "[t]o prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Id.* at 410.

As it concerns a single hiring decision, a more rigorous standard of culpability and causation must apply. *Id.* at 405. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." *Id.* at 406-07. A finding of culpability "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* at 412.

In this case, the FAC has not cured the deficiency noted in the Court's prior order explaining that Plaintiff had to provide supporting facts alleging the background of Defendant Officers and the specific constitutional violation. (Dkt. No. 7 at 6-7.) Instead, as before, the FAC alleges a formulaic recitation of a claim for failing to properly screen and hire without any additional supporting facts. (Dkt. No. 8, FAC ¶¶ 52-56.) Moreover, contrary to Plaintiff's argument, an inference of a failure to properly train and hire cannot be made due to a single instance of alleged misconduct by Defendant Officers. *See Brown*, 520 U.S. at 406-07 ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal

culpability and causation; the plaintiff will simply have shown that the *employee* acted culpably.").

As such, the Court GRANTS Defendant's motion to dismiss the fourth cause of action without leave to amend. *See Whyte v. City of San Diego*, Case No., 21cv1159-LAB-MDD, 2022 WL 17491178, at *3 (S.D. Cal. Dec. 7, 2022) (dismissing failure to properly screen and hire as conclusory) (citing *Amaral v. City of San Diego*, Case No.: 17-cv-02409-L-JMA, 2018 WL 3308987, at *3 (S.D. Cal. July 5, 2018) (granting motion to dismiss failure to properly screen and hire for failing "to provide any facts about the City's hiring practices or allege any facts about Williams' background to support the allegation that the City was "deliberately indifferent" in its hiring process")).

### 3. Fifth Cause of Action - Failure to Properly Train

Defendants maintain that the failure to properly train claim should be dismissed because Plaintiff again has failed to provide any facts to support his conclusory and unsupported legal conclusions. (Dkt. No. 9-1 at 9-10.) Plaintiff disagrees arguing he has plead all the necessary elements. (Dkt. No. 13 at 7-8.)

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. Failure to train may serve as a basis for § 1983 municipal liability only "where failure to train amounts to deliberate indifference to rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference requires proof that the municipal entity "disregarded a known or obvious consequence" that a particular omission in its training program would cause city employees to violate citizens' constitutional rights. *See Brown*, 520 U.S. at 410. "Thus, when [the municipal entity is] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose[s] to retain that program." *Connick*, 563 U.S. at 61 (citing *Brown*, 520 U.S. at 407).

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)). the City has a custom and policy of engaging in racially discriminatory stops and seizures based on racial profiling.

Here, the FAC alleges that the City of San Diego violated his Fourth Amendment right to be free from an unlawful seizure, excessive force and racial profiling. (Dkt. No. 8, FAC ¶¶ 30, 37, 47, 61, 73.) Next, Plaintiff alleges that the City failed to train its officers on the proper use of force under the Fourth Amendment despite having policies in place that addresses use of force and that traffic policies be applied "equally and fairly." (*Id*. ¶¶ 26, 30, 58.) Plaintiff alleges that the City, by failing to train its officers, was deliberately indifferent to his constitutional rights to be free from an unlawful seizure, excessive force and racial profiling. (*Id.* ¶¶ 60, 73.)

As discussed above, Plaintiff has not sufficiently alleged the City was deliberately indifferent to Plaintiff's constitutional rights to be free from an unreasonable seizure, excessive force and racial profiling by relying on the four studies and reports. Therefore, the Court GRANTS Defendants' motion to dismiss the fifth cause of action for failure to train. *Compare Young v. City of Menifee*, 2019 WL 4238880, at *6 (C.D. Cal. Aug. 2, 2019) (dismissing *Monell* claim when plaintiff failed to "identify any specific instances," other than his own experience, "where [Defendant] engaged in such [unconstitutional] conduct") *with J.M. by and Through Rodriguez v. Cnty. of Stanislaus*, 2018 WL 5879725, at *6 (E.D. Cal. Nov. 7, 2018) (denying motion to dismiss *Monell* claim when plaintiff's complaint described "multiple, specific events" of constitutional violation).

/ / /

/ / /

### 4. Sixth Cause of Action - Failure to Properly Supervise and Discipline

A claim of failure to supervise and discipline is subject to the same standard as a failure to train claim. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("*Canton* dealt specifically with inadequate training. We see no principled reason to apply a different standard to inadequate supervision."). "A plaintiff may establish municipal liability if it can prove that a municipality's omissions, such as a failure to supervise and discipline, render it responsible for a constitutional violation even though the municipality's policies are facially constitutional." *Gonzalez v. Alva*, No. 11–CV–2846 W(WVG), 2013 WL 3795691, at *6 (S.D. Cal. July 19, 2013) (citing *Gibson v. Cnty. of Washoe*, *Nev.*, 290 F.3d 1175,1186 (9th Cir. 2002)). A plaintiff must show that "that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Canton*, 489 U.S. at 387). To prove a municipality's deliberate indifference, a plaintiff must show that the municipality was on actual or constructive notice that its failure to supervise or discipline would likely result in a constitutional violation. *See id.*

Again, Plaintiff's reliance on the four studies and reports to support his failure to supervise claim are not sufficient to demonstrate the City's deliberate indifference to his constitutional rights. Therefore, the Court GRANTS Defendants' motion to dismiss the failure to supervise cause of action.

### F. Leave to Amend

To the extent the Court dismisses any causes of action, Plaintiff seeks leave to amend as he can further substantiate his claims. (*See* Dkt. No. 13 at 10-11.) While it is not clear why Plaintiff did not fully substantiate his claims in the FAC, leave to amend should be freely granted and would not be futile. *See Chubb*, 710 F.3d at 956.

Thus, the Court GRANTS Plaintiff's request for leave to amend with one final opportunity but only as to the fifth to seventh causes of action.

/ / /

**Conclusion**

Based on the above, the Court GRANTS Defendants' motion to dismiss the *Monell* claims in the FAC with leave to amend as to the fifth to seventh causes of action. Plaintiff shall file a second amended complaint within 21 days of the Court's order. The hearing set for October 4, 2024 shall be **vacated**.

IT IS SO ORDERED.

Dated: September 26, 2024

Hon. Gonzalo P. Curiel
United States District Judge