UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE RUSSELL an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, a municipality; SAN DIEGO POLICE DEPARTMENT OFFICER L. FANLO (BADGE #7841), an individual; DAVID NISLEIT, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 24cv0527-GPC(SBC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND**<br><br>**[Dkt. No. 19.]** |

    Before the Court is Defendants' motion to dismiss the remaining *Monell*[1] claims in the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 19.) Plaintiff filed an opposition and Defendants replied. (Dkt. Nos. 21, 22.) The Court finds that the matter is appropriate for decision without oral argument pursuant to Local Civ. R. 7.1(d)(1). Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendants' motion to dismiss the *Monell* claims.

/ / /

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

1

**Background**

On December 21, 2023, Plaintiff Terrance Russell ("Plaintiff") filed a 42 U.S.C. § 1983 civil rights complaint against Defendants City of San Diego, San Diego Police Department Officer L. Fanlo, and David Nisleit, Chief of San Diego Police Department in San Diego Superior Court. (Dkt. No. 1-2, Compl.) The case was removed to this Court on March 20, 2024. (Dkt. No. 1.) After the Court granted in part and denied in part Defendants' motion to dismiss, Plaintiff filed a first amended complaint ("FAC") on July 8, 2024 alleging claims against Defendants City of San Diego ("the City"), San Diego Police Department Officer L. Fanlo ("Officer Fanlo"), and Does 1-50 (collectively "Defendants"). (Dkt. No. 8.) (*Id.*) Then, on September 26, 2024, the Court granted Defendants' motion to dismiss the *Monell* claims with leave to amend. (Dkt. No. 17.) On October 17, 2024, Plaintiff filed a second amended complaint ("SAC") to correct the deficiencies noted on the *Monell* claims. (Dkt. No. 18.)

The facts arising from the alleged causes of action remain the same as the FAC. (*See* Dkt. No. 18, SAC.) The Court repeats them as they are brief. Plaintiff is a disabled Black man and alleges that on August 15, 2022, around 8:22 p.m., he was watching the sunset at Pacific Beach. (*Id.* ¶¶ 9, 10.) Plaintiff was behaving lawfully when Officer Fanlo and Doe Officer ("Defendant Officers") approached him and began to question him. (*Id.* ¶ 11.) One officer asked Plaintiff, "You starting fires around here, Black man?" (*Id.*) Plaintiff told them he was trying to enjoy the sunset. (*Id.*) Plaintiff then attempted to walk away but Defendant Officers grabbed Plaintiff aggressively, ignored his demands to "let him go," forced him to the ground while twisting his arm and wrist, and struck him. (*Id.* ¶ 12.) He was detained for "some time" on the ground. (*Id.*) Eventually, a Doe San Diego Policy Department ("SDPD") Sergeant arrived and informed Plaintiff that the situation was a misunderstanding. (*Id.* ¶ 13.) Defendant Officers let Plaintiff go but wrote a ticket for several alleged offenses, including resisting arrest which he denies. (*Id.*) In December 2022, Plaintiff discovered no charges were ever filed. (*Id.* ¶ 15.) Plaintiff claims he suffered physical injuries of a broken finger,

busted blood vessels, a bruised rib cage, and a torn rotator cuff as well emotional injuries of anxiety, stress, anger, trouble sleeping, mistrust of police, and humiliation as a result of the alleged encounter with Defendant Officers.  (*Id*. ¶ 17.)  On information and belief, neither the Doe SDPD Sergeant or any other supervisory employee of SDPD reported the misconduct by Defendant Officers regarding the treatment of Plaintiff.  (*Id.* ¶ 14.)

Plaintiff alleges eight causes of action[2]: (1) false arrest under 42 U.S.C. §1983 against Officer Fanlo; (2) excessive force under 42 U.S.C. § 1983 against Officer Fanlo; (3) false imprisonment under 42 U.S.C. § 1983 against Officer Fanlo; (4) failure to properly screen and hire under 42 U.S.C. § 1983 against the City of San Diego; (5) failure to properly train under 42 U.S.C. § 1983 against the City of San Diego; (6) failure to properly supervise and discipline under 42 U.S.C. § 1983 against the City of San Diego; (7) *Monell* violation based on an unconstitutional custom, policy or practice under 42 U.S.C. § 1983 against the City of San Diego; and **(**8) intentional infliction of emotional distress against all Defendants.  (Dkt. No. 18, SAC ¶¶ 28-91.)  Even though the Court dismissed the fourth cause of action for failure to properly screen and hire with prejudice, the SAC alleges the same claim again.

On October 29. 2024, Defendants filed the instant motion to dismiss the fourth to seventh causes of action raised under *Monell* for failure to state a claim which is fully briefed.  (Dkt. Nos. 19, 21, 22.)  In the opposition, Plaintiff acknowledges the fourth cause of action was erroneously included in the SAC and agrees to dismiss.  (Dkt. No. 21 at 2.[3])  Accordingly, the Court GRANTS Defendant's motion to dismiss the fourth cause of action with prejudice as unopposed.

///

---

[2] Even though the caption includes nine causes of action, the SAC only includes eight.  (*See* Dkt. No. 18, SAC.)  The SAC no longer includes the ninth cause of action for violation California Civil Code section 52.1.  Plaintiff may have inadvertently conflated the section 52.1 claim with the eighth cause of action for intentional infliction of emotional distress claim.  (*Id.* ¶¶ 80-91.)  Neither party has addressed these amendments.

[3] Page numbers are based on the CM/ECF pagination.

## Discussion

### A.   Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to dismiss claims that fail to establish a cognizable legal theory or do not allege sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). Under Rule 8(a)(2) a complaint must contain "a short and plain statement of the claim which entitles the pleader to relief." Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations but it must provide allegations that raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the plausibility standard is not a probability test, it does require more than a mere possibility the defendant acted unlawfully. *Id.* at 556. "When evaluating a Rule 12(b)(6) motion, the Court must accept all material allegations in the complaint as true, and construe them in the light most favorable to the non-moving party." *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013) (citation omitted).

B.   *Monell* **Claims Against the City of San Diego**

   1.   **Seventh Cause of Action –Unconstitutional Policy, Custom or Practice**

Defendants argue that the seventh cause of action should be dismissed because Plaintiff continues to fail to allege a widespread policy, practice or custom that deprived him of his constitutional rights.[4] (Dkt. No. 19-1 at 13-14.) Plaintiff responds that he has alleged that the City has a widespread practice of deliberately ignoring existing policies or laws, including SDPD Policy No. 1.04 (use of force), No. 7 (applying traffic stops "equally and fairly"), No. 9.31 (reducing/eliminating bias in policing) and No. 9.33 (requiring officers to report misconduct by other officers), (Dkt. No. 18, SAC ¶ 26), as well as policies and practices that violate the constitutional rights against unlawful seizures against Black people. (Dkt. No. 21 at 9-10.)

Cities, counties and other local government entities are subject to claims under 42 U.S.C. § 1983. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). While municipalities, their agencies and their supervisory personnel cannot be held liable under § 1983 on any theory of respondeat superior or vicarious liability, they can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. *Id.* at 691-93. Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694.

To prevail, a plaintiff must allege "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving force

---

[4] Defendants also argue that Plaintiff has failed to make any changes to the seventh cause of action despite an opportunity to amend. (Dkt. No. 19-1 at 13.) While the allegations on the seventh cause of action remain the same as the FAC, it also includes a paragraph incorporates all prior and subsequent paragraphs into the seventh cause of action. (Dkt. No. 18, SAC ¶ 75.) Therefore, the amendments made on the fifth and sixth causes of action also apply to the seventh cause of action. Therefore, Defendants argument that no changes were made on the seventh cause of action is not persuasive.

behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)). As to a municipality's policy, a "plaintiff must allege either that (1) a particular municipal action itself violates federal law, or directs an employee to do so; or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights." *Hyun Ju Park v. City and Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (internal quotation marks and citations omitted).

In this case, Plaintiff asserts liability based on a failure to act; therefore, he must allege the City acted with deliberate indifference which is "a stringent standard of fault, requiring proof that a [municipality] disregarded a known or obvious consequence of [its] action." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) ("Claims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof.") (citations omitted); *see also Hyun Ju Park*, 952 F.3d at 1141 ("When, as here, a plaintiff pursues liability based on a failure to act, she must allege that the municipality exhibited deliberate indifference to the violation of her federally protected rights.") (citing *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012)).

A plaintiff alleging deliberate indifference can survive a Rule 12(b)(6) challenge if he or she alleges the municipality has engaged in a pattern of prior, similar violations of federally protected rights of which it had actual or constructive notice. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference . . . ."); *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011) (reversing dismissal where plaintiff "specifically allege[s] numerous incidents" of prior, similar incidents of excessive force and the defendant was provided notice of all these incidents); *Bagos v. Vallejo*, No. 2:20-cv-00185-KJM-AC, 2020 WL 6043949, at *5-6 (E.D. Cal. Oct. 13,

2020) ("[p]rior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss."); *Villa v. Cnty. of San Diego,* Case No.: 20-CV-537-CAB-NLS, 2020 WL 5535384, at *3-4 (S.D. Cal. Sept. 15, 2020) (denying motion to dismiss *Monell* claim of policy and custom and failure to train claim as the plaintiff referenced federal investigations, citizen complaints and lawsuits against the County that include similar allegations of misconduct).

Here, the SAC alleges that the City violated Plaintiff's right to be free from an unreasonable seizure, excessive force and unlawful racial profiling. (Dkt. No. 18, SAC ¶¶ 30, 32, 37, 38, 47-49, 76.) Next, it claims the City had a custom or practice of making unlawful seizures without any reasonable suspicion or probable cause, using excessive force and "contacting, detaining, searching and arresting citizen based on unlawful racial profiling" despite having policies in place on these issues. (*Id.* ¶¶ 76-77.) It summarily alleges that the Defendants were deliberately indifferent to Plaintiff's constitutional rights with conscious disregard for the dangers of harm and injury to him. (*Id.* ¶¶ 53, 61.) Finally, Plaintiff asserts that the City's conduct "legally, proximately and foreseeably" caused him to suffer damages. (*Id.* ¶ 78.)

The question is on the motion to dismiss is whether Plaintiff has plausibly alleged that Defendants were deliberately indifferent to his constitutional right to be free from excessive force, from racial profiling and from an unreasonable seizure.

Plaintiff relies on the *same* four studies and reports he claims show that the City condones this "unspoken policy" of discriminatory and unlawful conduct and excessive force against Black people. (*See* Dkt. No. 18, SAC ¶¶ 19-25.) In its prior order, the Court addressed the relevance of these four studies and reports as it related to his *Monell* claim. (*See* Dkt. No. 17 at 7-8.) The Court concluded that the first 2016 study by San Diego State University regarding SDPD's policies, customs and practices which revealed that Black people are more likely to be searched and questioned in the field after being stopped was similar only to the extent Plaintiff was questioned in the field without

reasonable suspicion based on unlawful racial profiling. (*Id.* at 7.) As to the second study involving a 2019 published story by NBC San Diego, the Court found that this study was not factually relevant because it addressed excessive prosecutions, not excessive force or an unreasonable seizure. (*Id.*)

The Court observed that the final two reports, the National Justice Database City Report and the Police Scorecard, which addressed traffic or pedestrian stops where the studies showed that Black people have been subject to excessive force and unreasonable seizures significantly more than other racial groups, could support an allegation of deliberate indifference by demonstrating prior, similar instances of similar constitutional violations experienced by Plaintiff. (*Id.* at 7-8.) However, as to the Police Scorecard, Plaintiff did not allege the relevant years for the report and had not alleged the City of San Diego had actual or constructive knowledge of this report. (*Id.* at 8.) As to the National Justice Database City Report, while the study looked at traffic stops from 2017-2020, Plaintiff had not alleged that the City of San Diego had actual or constructive knowledge of the report. (*Id.*) Ultimately, the Court concluded that Plaintiff had not alleged deliberate indifference to survive a motion to dismiss. (*Id.*)

Despite Plaintiff's failure to cure the deficiencies concerning the four studies and reports, the Court takes judicial notice[5] of the City of San Diego's website that includes the third report, the National Justice Database Digital Report by the Center for Policing Equity, https://www.sandiego.gov/police/data-transparency/center-policing-equity-report. *See* Fed. R. Evid. 201(c) (court "may take judicial notice on its own"), (d) ("court may take judicial notice at any stage of the proceeding."); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (taking judicial notice of information made publicly available on government entity website) (citing *Cnty. of Santa Clara v. Astra USA, Inc.*,

---

[5] A court may take judicial notice of a fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of information posted on a Department of Health and Human Services web site).  While the link to the report is no longer valid, the existence of the National Justice Database Report on the City's own website demonstrate the City had actual or constructive notice that the San Diego Police Department, as it related to traffic stops from 2017-2020, searched Black people 2.5 times more often as White people and used excessive force 5 times more often as White people per year on average.  (*See* Dkt. No. 18, SAC ¶ 21.)  As such, the Court concludes, at this stage of the proceedings, Plaintiff has plausibly alleged that the City was deliberately indifferent to Plaintiff's constitutional rights.  The Court DENIES Defendants' motion to dismiss the seventh cause of action.[6]

### 2. Fifth Cause of Action - Failure to Properly Train

Defendants maintain that the failure to properly train claim should be dismissed because Plaintiff again has failed to provide any facts to support his conclusory and unsupported legal conclusions.  (Dkt. No. 19-1 at 10-11.)  Plaintiff contends that based on Officer Fanlo and Doe Officer's conduct, it can be inferred that they were not properly trained on SDPD policies and/or they deliberately ignored their training and even evidence of a single violation can support municipal liability.  (Dkt. No. 21 at 6-6.)

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of

---

[6] In order to cure the inadequacies in the prior pleading, the SAC also alleges that the City and the SDPD have been on notice of the deficiencies in its policies and practices based on cases filed against the City citing to *McKinnie v. City of San Diego*, Case No. 3:24cv827-H(SBC), 2024 WL 4126062 (S.D. Cal. Sept. 9, 2024) and *Brandon v. City of San Diego*, Case No. 24cv1164-BAS(KSC) (S.D. Cal.).  (Dkt. No. 18, SAC ¶ 27 & n. 1.)  The Court agrees with Defendants that *McKinnie* and *Brandon* do not support Plaintiff's *Monell* claim because both cases involved incidents that post-dates the experience in this case which occurred on August 15, 2022, (Dkt. No. 18, SAC ¶ 10).  *See McKinnie*, 2024 WL 4126062, at *1 (incident occurred on July 6, 2023); *Brandon*, Case No. 24cv1164-BAS(KSC) (S.D. Cal.), Dkt. No. 2, FAC ¶ 10 (incident occurred on August 30, 2022).  In response, Plaintiff provides two additional cases involving past incidents of constitutional violations.  (Dkt. No. 21 at 5 (citing *Wilson v. Hays*, 228 F. Supp. 3d 1100 (S.D. Cal. 2017) and *Doe v. City of San Diego*, 35 F. Supp. 3d 1233 (2014)).  However, both cases are not factually similar as they involve allegations that a San Diego Police Officer sexually assaulted the plaintiffs which is not at issue in this case.

an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. Failure to train may serve as a basis for § 1983 municipal liability only "where failure to train amounts to deliberate indifference to rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference requires proof that the municipal entity "disregarded a known or obvious consequence" that a particular omission in its training program would cause city employees to violate citizens' constitutional rights. *See Brown*, 520 U.S. at 410. "Thus, when [the municipal entity is] on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose[s] to retain that program." *Connick*, 563 U.S. at 61 (citing *Brown*, 520 U.S. at 407).

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

Here, Plaintiff alleges that the City of San Diego violated his Fourth Amendment right to be free from an unlawful seizure, excessive force and racial profiling. (Dkt. No. 18, SAC ¶¶ 30, 32, 37, 38, 47-49 76.) Next, Plaintiff alleges that the City failed to train its officers on the proper use of force under the Fourth Amendment despite having policies in place that addresses use of force and that traffic policies be applied "equally and fairly." (*Id.* ¶¶ 26, 59-60.) Plaintiff also maintains that Defendants have been on notice of the deficiencies of these policies and procedures based on the studies cited and lawsuits filed relating to the same or similar facts, yet nothing has been done. (*Id.* ¶ 63.) As such, Plaintiff claims that the City, by failing to train its officers, was deliberately indifferent to his constitutional rights to be free from an unlawful seizure, excessive force and racial profiling. (*Id.* ¶¶ 61, 64.)

Plaintiff's argument that the Court can infer a failure to train based on Defendant Officers' conduct was rejected by the Supreme Court in *Brown*. *See Brown*, 520 U.S. at 406 ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation . . . ."). Further, as to the "single incident" theory of liability, the Supreme Court adopted this theory on a failure to train claim where a plaintiff may be allowed to show deliberate indifference based on a single incident rather than a pattern of similar violations. *See Connick*, 563 U.S. at 64 ("the Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."); *Brown*, 520 U.S. at 409 (in a "narrow range of circumstances" "a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability."). Yet, Plaintiff has not alleged facts to support the narrow and rare exception of a single incident violation.

However, as discussed above, Plaintiff has sufficiently alleged the City had actual or constructive knowledge of a pattern that its police officers were violating the constitutional rights of Black people more than White people and as such was deliberately indifferent to Plaintiff's right to be free from an unreasonable seizure, excessive force and unlawful racial profiling, yet failed to train its officers. (Dkt. No. 18, SAC ¶¶ 21, 61-64.) Therefore, the Court DENIES Defendants' motion to dismiss the fifth cause of action for failure to train.

### 3. Sixth Cause of Action - Failure to Properly Supervise and Discipline

Defendants move to dismiss the sixth cause of action for failing to supervise and discipline because the SAC fails to correct the deficiency noted by the Court. (Dkt. No. 19-1 at 11-12.) Plaintiff responds that the fact Officer Fanlo was never disciplined

demonstrates the City's deliberate indifference to Plaintiff's constitutional rights. (Dkt. No. 21 at 8.)

A claim of failure to supervise and discipline is subject to the same standard as a failure to train claim. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("*Canton* dealt specifically with inadequate training. We see no principled reason to apply a different standard to inadequate supervision."). "A plaintiff may establish municipal liability if it can prove that a municipality's omissions, such as a failure to supervise and discipline, render it responsible for a constitutional violation even though the municipality's policies are facially constitutional." *Gonzalez v. Alva*, No. 11–CV–2846 W(WVG), 2013 WL 3795691, at *6 (S.D. Cal. July 19, 2013) (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175,1186 (9th Cir. 2002)). A plaintiff must show that "that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Canton*, 489 U.S. at 387). To prove a municipality's deliberate indifference, a plaintiff must show that the municipality was on actual or constructive notice that its failure to supervise or discipline would likely result in a constitutional violation. *See id.*

Again, as explained above, Plaintiff has plausibly alleged that the City was deliberately indifferent to his constitutional rights to be free from an unreasonable seizure, excessive force and unlawful racial profiling, and as such, failed to supervise or discipline its officers. (Dkt. No. 18, SAC ¶¶ 21, 71-73.) Therefore, the Court DENIES Defendants' motion to dismiss the sixth claim for failure to supervise under *Monell*.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**Conclusion**

Based on the above, the Court DENIES Defendants' motion to dismiss the *Monell* claims in the SAC on the fifth to seventh causes of action. The Court also GRANTS Defendant's motion to dismiss the fourth cause of action as unopposed.

IT IS SO ORDERED.

Dated: January 24, 2025

Hon. Gonzalo P. Curiel
United States District Judge