UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE RUSSELL an individual, Plaintiff, v. CITY OF SAN DIEGO, a municipality; SAN DIEGO POLICE DEPARTMENT OFFICER L. FANLO (BADGE #7841), an individual; and DOES 1-50, inclusive, Defendants. | Case No.: 24cv0527-GPC(SBC) **ORDER GRANTING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT** **[Dkt. No. 63.]** |

Before the Court is Defendants' motion to enforce the settlement agreement achieved during the February 11, 2026 settlement videoconference before the Magistrate Judge. (Dkt. No. 63.) No opposition was filed by Plaintiff. Based on the reasoning below, the Court GRANTS Defendants' motion to enforce settlement.

**BACKGROUND**

On December 21, 2023, Plaintiff Terrance Russell ("Plaintiff") filed a 42 U.S.C. § 1983 civil rights complaint against Defendants City of San Diego, San Diego Police Department Officer L. Fanlo, and David Nisleit, Chief of San Diego Police Department in San Diego Superior Court. (Dkt. No. 1-2, Compl.) On March 20, 2024, the case was removed to this Court. (Dkt. No. 1.) After the Court granted in part and denied in part

Defendants' motion to dismiss, Plaintiff filed a first amended complaint ("FAC") on July 8, 2024 alleging claims against Defendants City of San Diego ("the City"), and San Diego Police Department Officer L. Fanlo ("Officer Fanlo") (collectively "Defendants"). (Dkt. Nos. 7, 8.) Then, on September 26, 2024, the Court granted Defendants' motion to dismiss the *Monell* claims with leave to amend. (Dkt. No. 17.) On October 17, 2024, Plaintiff filed a second amended complaint ("SAC") to correct the deficiencies noted on the *Monell* claims. (Dkt. No. 18.) After the Court granted in part and denied in part Defendants' motion to dismiss the SAC, (Dkt. No. 24), Defendants the City and Officer Fanlo filed an answer on February 7, 2025. (Dkt. No. 25.) On September 24, 2025, the Court granted the motion to withdraw as Attorney for Plaintiff. (Dkt. No. 37, 40.) Plaintiff has been proceeding *pro se*.

On December 12, 2025, Defendants filed motion for summary judgment, or in the alternative, partial summary judgment. (Dkt. No. 46.) Plaintiff did not file an opposition. In the meantime, on February 11, 2026, the Magistrate Judge held a mandatory settlement conference via videoconference. (Dkt. No. 52.) The parties reached a settlement and the terms of the settlement were placed on the record. (*Id.*) According to the settlement, the City agreed to pay Plaintiff a total of $5,000 in exchange for an executed release agreement and a filled out W-9 form. (Dkt. No. 59 at 5.[1]) The parties further agreed that once Plaintiff executes the settlement agreement and receives the settlement funds, Defendants will prepare a Joint Motion for Dismissal for Plaintiff's review and approval. (*Id.* at 5.) Both parties orally confirmed the terms of the settlement agreement. (*Id.* at 5-6.)

On February 17, 2026, the City sent a letter to Plaintiff via email outlining the steps and attached a draft Release and Settlement of All Claims, a W-9 form, a draft Joint Motion for Dismissal, and draft proposed Order Granting Joint Motion to Dismiss with

[1] Page numbers are based on the CM/ECF pagination.

Prejudice. (Dkt. No. 63-2, Leasure Decl. ¶ 3; *id*., Ex. 2 at 14-25.) Defendants reached out to Plaintiff several times regarding the documents but he never responded. (Dkt. No. 63-2, Leasure Decl. ¶ 4.)

On April 22, 2026, the Magistrate Judge held a settlement disposition conference with a further settlement disposition conference held on May 21, 2026. (Dkt. Nos. 57, 61.) At the May 21, 2026 settlement disposition conference, it was noted that Plaintiff had not yet signed the settlement agreement and Defendants intend to file a motion to enforce the settlement agreement within thirty days if Plaintiff failed to return the signed settlement documents. (Dkt. No. 62.) On June 15, 2026, Defendants filed a motion to enforce settlement agreement asking the Court to order Plaintiff to execute the release agreement and provide properly completed W-9 form within thirty days of the hearing of the motion. (Dkt. No. 63-1 at 3-4.) Defendants also request that in the event that Plaintiff fails to comply with the Court's order, the Court dismiss the action, with prejudice, with no obligation owed to Plaintiff. (*Id*. at 4.)

## DISCUSSION

### A. Motion to Enforce Settlement Agreement

A district court has the inherent power to summarily enforce, by way of motion, a settlement agreement entered into while the litigation is pending before it. *In re City of Equities Anaheim, Ltd*., 22 F.3d 954, 957 (9th Cir. 1994); *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). "To be enforced, a settlement agreement must meet two requirements. First, it must be a complete agreement meaning "the parties have reached agreement on all material terms." *Callie*, 829 F.2d at 891. Second, both parties "must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute." *Marks-Forman v. Reporter Pub. Co*., 12 F. Supp. 2d 1089, 1092 (S.D. Cal. 1998) (internal citations omitted). An "oral agreement is binding on the parties, particularly when the terms are memorialized into the record," and "even if a party has a change of heart [after agreeing] to its terms but before the terms are reduced to writing." *Doi v. Halekulnai Corp.,* 276 F.3d 1131, 1138 (9th Cir. 2002) (quoting

*Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2000)). A party's refusal to sign written settlement documents after an in-court oral agreement does not defeat enforcement. *See id.* 276 F.3d at 1138 (holding that appellant was bound by the settlement agreement, despite not signing a written contract, because she affirmed the terms on the record in open court.) Provisions "in full accord with the terms of agreement stated in open court" are enforceable. *Id.* at 1139-40.

Here, the Magistrate Judge held a settlement conference on February 11, 2026. (Dkt. No. 51.) With both parties present, the Magistrate Judge confirmed the settlement and placed the material terms on the record. (Dkt. Nos. 52, 59.) These terms included: (1) Defendants will pay Plaintiff $5,000; (2) Plaintiff will provide Defendants with a filled out W-9 form; (3) Defendants will draft a written settlement agreement for Plaintiff to sign and return; and (4) Defendants will provide a Joint Motion to Dismiss for Plaintiff to execute after receiving the settlement funds. (Dkt. No. 59 at 5.) Both parties verbally confirmed their agreement to these terms. (*Id.* at 5-6.)

The parties thus reached a complete settlement agreement encompassing both parties' obligations—specifically, Defendants' obligation to pay and draft the relevant written documents and Plaintiff's obligation to provide a filled out W-9 form and sign the written documents. As Plaintiff is proceeding *pro se*, he inherently possesses the authority to settle his own case, and defense counsel confirmed his authority to settle on behalf of Defendants. (Dkt. No. 40; Dkt. No. 59 at 6.) The parties entered into this oral agreement before the Magistrate Judge, and its terms were memorialized on the record. For the foregoing reasons, this oral agreement is binding and enforceable and Plaintiff's subsequent failure to sign the written settlement agreement does not render it unenforceable. *See Doi*, 276 F.3d at 1136-37 ("[a]n agreement does not have to be in writing to be binding. An oral agreement is binding.").

For the foregoing reasons, the Court GRANTS Defendants' motion to enforce the settlement agreement.

/ / /

**B. Request for Dismissal**

In the event Plaintiff fails to comply with the Court's order, Defendants summarily request dismissal of the action, with prejudice, with no obligation owed to Plaintiff. (Dkt. No. 63-1 at 4.) Defendants provide no legal authority to support dismissal of the action in the event Plaintiff fails to comply with this Court's order.

Federal Rule of Civil Procedure 41(b) allows the court to dismiss an action for failure of the plaintiff to obey an order of the court. Fed. R. Civ. P. 41(b). A district court has an inherent power to dismiss an action in order to protect the integrity of its orders and that "[t]he decision to dismiss for failure to comply with an order is within discretion of trial court." *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (citations omitted). On assessing whether to dismiss a claim for failure to prosecute or failure to comply with a court order, the Court must consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants[ ]; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

However, Defendants' request for dismissal rests entirely on a hypothetical, future non-compliance that may or may not occur. Therefore, the Court DENIES Defendants' request to dismiss the action as premature. Defendants may file a motion seeking dismissal with facts and law if Plaintiff fails to comply with this Court's order enforcing the settlement agreement.

**CONCLUSION**

Based on the above, the Court GRANTS Defendants' motion to enforce settlement agreement. The Court ORDERS Plaintiff to sign and return to Defendants the Release and Settlement of All Claims and a completed W-9, both of which have already been

provided by Defendants on or before **September 14, 2026**.[2] Once Plaintiff receives the settlement funds, he shall execute and return to Defendants the Joint Motion for Dismissal. The Court DENIES Defendants' request for dismissal of the case for Plaintiff's failure to comply with the Court's order as premature. The hearing date set on August 14, 2026 shall be **vacated.**

IT IS SO ORDERED.

Dated: July 31, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[2] The Court notes that the letter sent to Plaintiff on February 17, 2026 differs slightly on the procedures stated in the oral settlement agreement. The February 17, 2026 letter asks Plaintiff to return the signed Release and Settlement of All Claims, a completed W-9 form and a signed Joint Motion for Dismissal before Defendants provide the settlement funds. (Dkt. No. 63-2, Leasure Decl., Ex. 2 at 14.) However, this instruction is inconsistent with the oral settlement agreement, which requires Plaintiff to execute the Joint Motion for Dismissal only *after* receiving Defendants' payment. (Dkt. No. 59 at 5.) Nonetheless, the factual assertions and requests made in Defendants' own motion is consistent with the settlement agreement. (Dkt. No. 63-1, at 2-4.) A court will not consider "evidence extrinsic to the oral settlement agreement placed on the record" where the language of the oral agreement is "clear and explicit." *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2018 WL 3570664, at *2 (N.D. Cal. July 25, 2018) (citing Cal. Civ. Code § 1638). Because the oral agreement establishes a clear timeline, the Court enforces its terms and orders Plaintiff to submit only a signed Release and Settlement of All Claims and a completed W-9 to initiate the payment process.